**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RAJPAL SINGH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-863-R** |
| | ) | |
| **CHRIS GANTT, et al.,** | ) | |
| | ) | |
| **Respondents.**[1] | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Rajpal Singh, a citizen of India proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[2] (Doc. 1).[3] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and (C). (Doc. 3). Respondents filed a timely Response

---

[1] Sirce E. Owen was appointed as the Acting Director of the Executive Office for Immigration Review in July of 2026. She replaces Daren Margolin and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Petitioner is housed at the Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 4).

[3] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

in Opposition. (Doc. 9).[4] Petitioner timely filed a reply. (Doc. 10). Respondents were ordered to provide a transcript of Petitioner's custody redetermination hearing. (Doc. 12). Respondents have conventionally filed an audio recording of the bond proceedings. (Doc. 14). For the reasons set forth below, the undersigned recommends that the Petition be **DENIED** and that this action be **DISMISSED WITHOUT PREJUDICE**.

## I. Factual Background

Petitioner is a citizen of India who entered the United States without inspection on or about June 6, 2024. (Doc. 9, at Ex. 1, at 1). Petitioner was apprehended by Customs and Border Protection agents, who placed him in removal proceedings through issuance of a Notice to Appear ("NTA") alleging his removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a non-citizen present without admission or parole. (*Id.*) Petitioner was released by DHS on an Order of Recognizance ("OREC").[5] (Doc. 1, at Ex. 1, at 3; Doc. 1, at 10). Petitioner alleges that, following his release, he attended check-ins with ICE, updated his address with the Immigration Court, and otherwise complied with the conditions of his release. (Doc. 1, at 10). On an unknown date, Petitioner filed an asylum application with the Immigration Court. (*Id.*)

---

[4] The Response was not filed on behalf of Mr. Gantt because he is not a federal official. (Doc. 9, at 1 n.1). The undersigned concludes that a separate response from Warden Gantt is not necessary to resolve this matter.

[5] The Petition alleges that an asylum officer determined Petitioner had a credible fear of persecution or torture following his initial apprehension. (Doc. 1, at 10). The NTA does not reflect a credible fear finding. (Doc. 9, at Ex. 1, at 1). The undersigned concludes the discrepancy is immaterial to the issues presented.

On January 4, 2026, Petitioner was encountered by Oklahoma Highway Patrol (OHP) Officers during a vehicle traffic stop. (Doc. 1, at Ex. 1, at 3). Petitioner was detained and taken to the Sequoyah County jail in Sallisaw, Oklahoma. (*Id.*) On January 5, 2026, Petitioner was transported to the ICE sub-office in Tulsa, Oklahoma, for processing. (*Id.*) Also on January 5, 2026, Petitioner was arrested pursuant to a Form I-200, Warrant of Arrest. (Doc. 9, at Ex. 2, at 1). At some point, Petitioner was transported to the Cimarron Correctional Facility, in Cushing, Oklahoma, where he remains in custody.[6] (Doc. 1, at 11).

On February 13, 2026, Petitioner, through counsel, requested a custody redetermination hearing, commonly referred to as a "bond hearing," with the Aurora Immigration Court. (Doc. 1, at Ex. 3, at 3). An Immigration Judge conducted a bond hearing on February 23, 2026. (*Id*. at Ex. 2, at 2). At the hearing, the Immigration Judge admitted Petitioner's supporting evidence[7] into the record and confirmed with government counsel that Petitioner did not have any criminal history. (Doc. 14). The Immigration Judge questioned Petitioner's counsel to discern if Petitioner had any immediate family members in the United States and to ask if he had any assets. (*Id.*) Petitioner's counsel was permitted to make a closing statement in support of Petitioner's request. (*Id.*)

[6] *See* ICE Detainee Locator, locator.ice.goc/odls/#/results (last visited August 19, 2026).

[7] Petitioner submitted evidence including the following: a declaration from his Lawful Permanent Resident cousin who offered to serve as bond obligor and to provide Petitioner with housing and financial support, an employment verification letter, community letters, and the obligor's financial documents. (*See* Doc. 1, at Ex. 3).

In an oral ruling, the Immigration Judge denied bond, concluding that Petitioner had not sustained his burden of showing that he is not a flight risk. (Doc. 14). The Immigration Judge explained that he had considered the totality of the evidence in rendering his determination. (*Id.*) When the Immigration Judge stated the grounds for the flight risk conclusion, he listed the following factors: (1) the limited availability of immigration relief given the perceived weaknesses of Petitioner's asylum application, (2) Petitioner's lack of family ties in the United States, and (3) Petitioner's lack of property or assets in the United States. (*Id.*) The written order issued on the same day states that "[a]fter hearing and considering the totality of evidence before the Court, the Court denies bond based on its finding that [Petitioner] presents a flight risk." (Doc. 1, at Ex. 2, at 2). Petitioner reserved appeal but did not file an appeal. (*Id.*; Doc. 9, at 2). On March 2, 2026, Petitioner filed a Motion to Reconsider the bond decision, which remains pending. (Doc. 1, at Ex. 4; Doc. 1, at 12).

An Immigration Judge denied Petitioner's asylum application and ordered him removed on May 15, 2026. *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited August 14, 2026). Petitioner timely appealed that decision to the Board of Immigration Appeals ("BIA") on May 26, 2026, and his appeal remains pending. *Id.*

## II. Petitioner's Claims

Petitioner alleges five grounds for relief, which can be distilled into three overarching arguments.

Grounds I, II, and IV each challenge the adequacy of the February 23, 2026, bond hearing on procedural due process grounds. In Ground I, Petitioner contends that the Immigration Judge "failed to conduct the required individualized and meaningful assessment of [his] custody status," arguing that "[i]nstead of weighing all relevant factors, the Immigration Judge rested his decision on a narrow and speculative basis, disregarding overwhelming evidence that Petitioner is neither a flight risk nor a danger." (Doc. 1, at 13-14). Grounds II and IV identify the specific defects underlying that contention. In Ground II, Petitioner asserts that the flight risk determination is contrary to the evidentiary record and constitutes a "clear abuse of discretion." (*Id*. at 15-16). Petitioner argues that the "failure to weigh this evidence renders the bond hearing illusory" and his continued detention "arbitrary." (*Id.* at 16). In Ground IV, Petitioner contends that the Immigration Judge violated his due process rights by relying on an uncounseled statement made during his January 5, 2026, arrest, in which he purportedly expressed no fear of persecution. (*Id.* at 17-18).

Ground III presents a related regulatory claim. Petitioner argues that the Immigration Judge violated 8 C.F.R. § 1003.19(d), which provides that bond hearings "shall be separate and apart from, and shall form no part of," removal proceedings, by considering the merits of Petitioner's asylum claim as part of the flight risk analysis. (*Id.* at 16-17).

Ground V presents a distinct procedural due process claim directed at the re-detention itself. Petitioner asserts that DHS's earlier decision to release him on his own recognizance created a protected liberty interest. (*Id.* at 19). Petitioner argues that his

January 5, 2026, arrest deprived him of that interest without notice, a pre-deprivation hearing, or any identified materially changed circumstances, in violation of the Fifth Amendment. (*Id.* at 19-20).

Petitioner requests immediate release or, alternatively, a new bond hearing at which DHS bears the burden of proof by clear and convincing evidence. (*Id*. at 20-21). Petitioner also requests an order prohibiting his transfer outside the Western District of Oklahoma during the pendency of this action,[8] a declaration that his detention is unlawful, and an

---

[8] The Court should decline this request. Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* (citation modified). The decision regarding where to detain noncitizens awaiting removal proceedings is a discretionary power of the Secretary of DHS. Under 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." The Tenth Circuit has confirmed "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal." *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Accordingly, § 1252(a)(2)(B)(ii) also bars judicial review of any decision by Respondents to transfer Petitioner to another ICE facility. *See Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"). Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.[9] (*Id.*)

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV. Analysis

### A. Sections 1252(b)(9) and 1252(g) Do Not Deprive This Court of Jurisdiction To Consider Habeas Claims Challenging Immigration Detention.[10]

Respondents contend that 8 U.S.C. §§ 1252(b)(9) and 1252(g) channel Petitioner's claims into a petition for review before the appropriate court of appeals and deny this Court jurisdiction. (Doc. 9, at 3-5, 8-9). In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar

---

[9] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

[10] Respondents also suggest that the administrative appeals process, rather than habeas, is the proper avenue for Petitioner's claims. (*See* Doc. 9, at 7-8). Exhaustion of administrative remedies is non-jurisdictional, and neither § 2241 nor § 1226(a) requires it. *See, e.g., Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas."); *Repela v. ICE Field Off. Dir.*, No. 26-CV-00552, 2026 WL 776123, at *2 (D. Colo. Mar. 19, 2026) ("[E]ven though a noncitizen detained pursuant to § 1226 may request a bond hearing, they are not required to do so before they can pursue § 2241 habeas relief."). The undersigned accordingly considers the Petition despite Petitioner's election to file a motion to reconsider rather than an appeal to the BIA.

is narrow in scope and applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Judges of this District have consistently ruled the INA does not jurisdictionally bar a habeas claim like Petitioner's, which challenges the legality of his present detention and does not challenge his removal proceedings. *See, e.g.*, *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (concluding the Court's "ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but rather arguing "he is detained in violation of the INA") (citation modified); *Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here."); *Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *2 (W.D. Okla. June 25, 2026) (collecting cases); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025). The undersigned recommends that the Court follow this District's consistent approach and consider the Petition.

**B. Statutory and Regulatory Framework**

The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a), which authorizes his detention "on a warrant issued by the Attorney General" pending a decision

on removal.[11] *See Santillan Quiroz v. Mullin*, — F.4th —, 2026 WL 1876709, at *5 (10th Cir. June 30, 2026) ("[N]oncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond).") (citation modified). Section 1226(a) grants the Attorney General discretion to continue detention, release the non-citizen on bond, or release the non-citizen on conditional parole. *See* 8 U.S.C. § 1226(a)(1)-(2).

The regulations implementing § 1226(a) establish a sequence of custody determinations. Following arrest on a warrant, 8 C.F.R. § 236.1(b)(1), an ICE officer makes the initial custody decision, and the non-citizen bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* § 236.1(c)(8). A non-citizen dissatisfied with that decision may "request amelioration of the conditions under which he or she may be released" from an Immigration Judge, who is authorized to "determine the amount of bond, if any, under which the [non-citizen] may be released." *Id.* § 236.1(d)(1).[12]

---

[11] Even though an Immigration Judge ordered Petitioner removed on May 15, 2026, Petitioner is still detained under § 1226 because his appeal is pending with the BIA and he is not yet subject to a final order of removal. *See Riley v. Bondi*, 606 U.S. 259, 267 (2025) (explaining an order of removal is final "at the earlier of two points: (1) a determination by the [BIA] affirming such order, or (2) the expiration of the period in which the alien is permitted to petition the BIA for review of the order").

[12] *See also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

At that bond hearing, "under current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate 'to the satisfaction of the Immigration Judge that he or she merits release on bond,' even though section 1226(a) does not explicitly contain such a requirement. To do so, the noncitizen must prove that he or she is neither a danger to the community nor a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (citation modified) (quoting *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)). The bond proceeding is "separate and apart from, and shall form no part of," the removal proceeding, and the Immigration Judge's determination "may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the [Department]." 8 C.F.R. § 1003.19(d). The Immigration Judge's decision may be appealed to the BIA, and the non-citizen may seek a further custody redetermination at any time his circumstances materially change. *Id.* §§ 236.1(d)(3), 1003.19(e).

DHS retains broad discretion to revoke a release. Section 1226(b) provides that DHS "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant and detain the alien."[13] Following re-arrest, the non-citizen may again seek a custody redetermination before an Immigration Judge under the procedures described above.

[13] *See also* 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officials] in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.").

### C. Petitioner Has Not Demonstrated a Violation of His Due Process Rights.

Petitioner received the process this framework contemplates. Petitioner's claims that due process requires additional protections fail for the reasons below.

#### 1. Petitioner's Bond Hearing Complied with Due Process.

In Grounds I, II, and IV, Petitioner purports to challenge the constitutionality of his February 23, 2026, bond hearing. For the most part, however, Petitioner takes issue with the weight the Immigration Judge afforded to certain factors when concluding that Petitioner presented a flight risk. Congress has insulated that determination from judicial review with 8 U.S.C. § 1226(e), which provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Thus, "a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026); *see also Perez v. Holt*, No. CIV-25-1151-SLP, 2026 WL 597126, at *6 (W.D. Okla. Mar. 3, 2026) ("Thus, the Court finds that the IJ relied on evidence in the record to make a discretionary decision to deny Petitioner bond; therefore, this Court lacks subject matter jurisdiction to review that decision.").

The statute leaves intact habeas jurisdiction over constitutional claims and questions of law relating to the bond hearing. *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026). However, a petitioner may not recast a

request to reweigh the evidence as a constitutional claim. *See Hernandez v. Holder*, 450 F. App'x 773, 775 (10th Cir. 2011) ("Discretionary agency decisions may not be recast as constitutional claims or questions of law simply to invoke [the Court's] jurisdiction."); *Salaria v. Grant*, No. CIV-26-141-D (W.D. Okla. May 13, 2026) ("Although Petitioner couches his claim in constitutional terms, he is asking the Court to re-weigh the evidence presented at the bond hearing and second guess the immigration judge's assessment.").

Ground II falls entirely on the barred side of that line. There, Petitioner asserts that the flight risk determination is "contrary to the weight of the evidence and constitutes a clear abuse of discretion," and he lists the evidence he contends the Immigration Judge undervalued and asks the Court to reach a different result. (Doc. 1, at 15-16). Section 1226(e) forecloses that review. *See Perez v. Grant*, No. CIV-26-596-SLP, 2026 WL 1182039, at *5 (W.D. Okla. Apr. 30, 2026) (finding habeas relief is appropriate only where the exercise of discretion "was so arbitrary that it would offend fundamental tenets of due process," and courts "cannot override an immigration judge's bond decision simply because they might have reached a different result") (quoting *Nucamendiz v. Hyde*, No. 25-CV-13851, 2026 WL 221449, at *2 (D. Mass. Jan. 28, 2026)). Grounds I and IV are barred to the same extent they quarrel with the weight the Immigration Judge assigned to particular evidence. *See Adejola v. Barr*, 439 F. Supp. 3d 120, 130 (W.D.N.Y. 2020) (finding that arguments that the immigration judge assessed the evidence incorrectly or improperly weighed particular aspects of the record fall beyond the court's jurisdiction).

What remains of Ground I is the contention that the hearing itself was constitutionally deficient. When "§ 1226 governs Petitioner's detention, the due process

owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). To be sure, "[d]ue process is not satisfied . . . by rubberstamp denials [of bond]." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999). But the record establishes that the bond hearing Petitioner received was not a rubber stamp. The Immigration Judge admitted Petitioner's evidentiary submissions into the record and permitted counsel to make a closing statement. (Doc. 14). In an oral ruling, the Immigration Judge explained the grounds for the flight risk conclusion by identifying facts drawn from the record. (*Id.*) "Petitioner does not indicate that he was denied the opportunity to present evidence at the bond hearing or that the IJ improperly shifted the burden of proof." *Kumar*, 2026 WL 753944, at *2. Thus, "he has not shown that the decision was somehow legally erroneous or unconstitutional."[14] *Id.* To the extent that Counts I and IV instead challenge whether the Immigration Judge's consideration of certain evidence constitutes a violation of

[14] Petitioner requests that this Court "[i]ssue a Writ of Habeas Corpus requiring that Respondents release Petitioner immediately (or, in the alternative, provide Petitioner with a bond hearing in which DHS carries the burden of proof by clear and convincing evidence, pursuant to 8 U.S.C. § 1226(a))." (Doc. 1, at 20-21). However, the Petition does not allege that the Immigration Judge violated Petitioner's due process rights through misallocation of the burden of proof at his previous bond hearing. Even if he had, the majority of Judges in this District have either (a) declined to reach the issue of whether due process requires the government, rather than the non-citizen, to carry the burden of proving dangerousness or flight risk at a § 1226(a) bond hearing, *see Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) ("declin[ing] to specify or alter the burden of proof at this stage.") (citation omitted), and/or (b) determined that due process does not require the burden to shift to the government, *see Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026) ("[T]he Fifth Amendment Due Process clause is not offended by leaving the burden of proof on the non-citizen in a § 1226(a) bond hearing.").

procedural due process, the Court retains jurisdiction, and the undersigned turns to those contentions here.

### 2. The Immigration Judge's Consideration of Particular Evidence Comported with Due Process.

The Court retains jurisdiction over Petitioner's remaining contentions, which present questions of law: whether the Immigration Judge could permissibly consider (a) the uncounseled statement recorded in the Form I-213 in which Petitioner purportedly expressed no fear of persecution and (b) the perceived strength of Petitioner's asylum application.

Because a removal proceeding "is a purely civil action to determine eligibility to remain in this country," the exclusionary rule generally does not apply, absent some "egregious violation." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 1050-51 (1984). Similarly, "*Miranda* warnings are not required in the deportation context" because removal proceedings are "not criminal in nature and the Sixth Amendment safeguards are not applicable." *Bustos-Torres v. I.N.S.*, 898 F.2d 1053, 1056 (5th Cir. 1990). Notwithstanding, non-citizens have the right to "a full and fair hearing that comports with due process." *See Kapcia v. I.N.S.*, 944 F.2d 702, 705 (10th Cir. 1991). Because the Federal Rules of Evidence do not apply in immigration hearings, "[t]he sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair." *Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1995).

A Form I-213, entitled Record of Deportable/Inadmissible Alien, is an "official record prepared by immigration officials when initially processing a person suspected of being in the United States without legal permission," akin to an arrest report. *Vera Punin v. Garland*, 108 F.4th 114, 119 (2d Cir. 2024). In immigration court proceedings and related appeals, I-213s are considered presumptively reliable documents, even without the testimony of the officer who prepared them, unless there is evidence that they contain incorrect information or information obtained by coercion or duress. *See, e.g.*, *Bauge v. I.N.S.*, 7 F.3d 1540, 1543 (10th Cir. 1993) (holding that a Form I-213 "was probative and its introduction was not fundamentally unfair"); *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013) ("As a general rule, a Form I-213 is treated as inherently trustworthy and admissible even without the testimony of the officer who prepared it."); *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009) ("Absent any indication that a Form I-213 contains information that is manifestly incorrect or was obtained by duress, the BIA has found the Form to be inherently trustworthy and admissible as evidence."); *Espinoza*, 45 F.3d at 310 ("[A] Form I-213 is probative on the issue of entry, and its admission is fair absent evidence of coercion or that the statements are not those of the petitioner.").

This presumption "closely tracks" Federal Rule of Evidence 803(8), which "exempt[s] public records containing factual findings from an official investigation from the prohibition on hearsay 'unless the sources of information or other circumstances indicate lack of trustworthiness.'" *Espinoza*, 45 F.3d at 310-11. Here, Petitioner does not allege the statement was coerced; he argues only that it was made without counsel and should have been corroborated. (Doc. 1, at 18). Petitioner, through counsel, had a full

opportunity at the bond hearing to contextualize or rebut the statement. Due process does not require anything further.

The Immigration Judge's consideration of Petitioner's prospects for relief was likewise permissible. The BIA has long held that an Immigration Judge "has broad discretion in deciding the factors that he or she may consider in custody redeterminations," *Guerra*, 24 I&N Dec. at 40, and that the likelihood a non-citizen will obtain relief from removal bears on his incentive to appear at future proceedings. *See Matter of Andrade*, 19 I&N Dec. 488, 490-491 (BIA 1987). The Immigration Judge weighed the perceived weaknesses of Petitioner's asylum application as one factor in the flight risk calculus, alongside family ties and assets, and did not purport to adjudicate the application, which proceeded to a merits hearing in due course.[15]

On account of the foregoing, the undersigned recommends that the Court deny Grounds I, III, and IV.

### 3. Petitioner Was Not Entitled to a Hearing Before Re-Detention.

In Ground V, Petitioner asserts that his release on an OREC[16] created a protected liberty interest, and that ICE's re-detention of him on January 5, 2026, without advance

[15] Ground III, which frames the same contention as a violation of 8 C.F.R. § 1003.19(d), should be denied for related reasons. The regulation provides that bond proceedings "shall be separate and apart from, and shall form no part of," any removal proceeding, and the proceedings here were conducted separately. Petitioner identifies no authority holding that this separation requirement bars an Immigration Judge from considering the potential availability of relief as one factor in the flight risk determination, and the same subsection permits the determination to rest on "any information" available to the Immigration Judge. 8 C.F.R. § 1003.19(d).

[16] The undersigned notes that neither party has filed a copy of the OREC.

notice, a pre-deprivation hearing, or identified changed circumstances violated the Fifth Amendment. (Doc. 1, at 19-20). Respondents contend that a non-citizen is entitled only to the process Congress has provided by statute, and that even if Petitioner possesses a liberty interest comparable to that of a parolee, due process does not require a hearing before arrest and detention. (*See* Doc. 9, at 9-12) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

The INA does not confer any right to a pre-deprivation hearing. As set forth above, § 1226(b) authorizes DHS to revoke a release "at any time," and the process the framework supplies follows arrest: an initial custody determination by an ICE officer, followed by a bond hearing before an Immigration Judge upon request. 8 U.S.C. § 1226(a)-(b); 8 C.F.R. § 236.1(c)(8), (d)(1). Nothing in the statute or regulations contemplates a hearing *before* re-arrest.

Judges in this District have, on occasion, ordered release where ICE revoked a non-citizen's release without changed circumstances or proper procedures, but they have declined to do so where the non-citizen's prior release was itself an exercise of DHS discretion.[17] The distinction derives from longstanding BIA precedent providing that

---

[17] *Compare Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at *1-2 (W.D. Okla. May 27, 2026) (ordering release where ICE improperly revoked petitioner's prior bond ordered by an immigration judge), *and Skutar v. Mullin*, CIV-26-0036-HE, Doc. 15, at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering petitioner's immediate release and stating "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance") (citation modified), *with Singh v. Mullin*, No. CIV-26-471-SLP, 2026 WL 1255801, at *2 (W.D. Okla. May 7, 2026) (finding petitioner entitled to a bond hearing rather than release where he "has not provided

"where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (describing *Sugay* as "an important implicit limitation" on the discretion § 1226(b) grants DHS to re-detain non-citizens previously released on bond). By its terms, that limitation attaches to a bond determination made by an Immigration Judge. Here, DHS, in its discretion, authorized Petitioner's initial release at processing, and Petitioner identifies no custody determination by an Immigration Judge that his re-arrest disturbed. (Doc. 1, at Ex. 3, at 3). Accordingly, Petitioner has not demonstrated that the circumstances of his re-detention entitled him to habeas relief in the form of release rather than a bond hearing, which he has already received. The constitutional claim similarly fails; Petitioner cites no authority holding that due process requires a hearing before re-arrest. For these reasons, Ground V fails.

## V. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **DENIED** and that this action be **DISMISSED WITHOUT PREJUDICE**.

**The Court advises the parties of their right to object to this Report and Recommendation by August 26, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P.

---

the Court with evidence of his prior Order of Release or its terms, nor has Petitioner supported his requested form of relief with legal authority").

72(b)(2).[18] The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 19th day of August, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

[18] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").